Snedaker vs. Moore.

CASE 56—PETITION ORDINARY—SEPTEMBER 25.

## Snedaker vs. Moore.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. An executory contract for the sale of land will not be specifically enforced where the written memorial describes the tract as containing 130 acres, when in fact it contained but 105 acres—the deficiency being supplied by the vendor by a subsequent purchase of 27 acres adjoining, but not within the boundaries of the tract as sold.

2. The law will not compel a vendee either to pay for land he did not buy, or to accept a conveyance of 105 acres when he bought 130 acres.

HARLAN & HARLAN and JNO. RODMAN, for appellant, cited 2 *Story's Eq.*, sec. 777; 1 *Wheat.*, 179; *Hilliard on Vend.*, ch. 12, sec. 31; *Hardin*, 544; 2 *Marsh.*, 225; 4 *Mon.*, 239; 1 *Bibb*, 611.

A. J. JAMES, T. N. LINDSEY, and G. W. CRADDOCK, for appellee, cited 3 *Bibb*, 317; 2 *Story's Eq.*, sec. 778; 5 *Munf.*, 185; 4 *Bibb*, 81; 3 *Litt.*, 358; 13 *Peters*, 36; *Sug. on Vend.*, 371.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

On the 12th of December, 1864, the parties made a contract in writing whereby the appellant sold and covenanted to convey to the appellee during that month his homestead farm in Franklin county, Kentucky, represented as containing 130 acres; and the appellee, in consideration thereof, covenanted to convey to the appellant his residence in Frankfort at a

Snedaker vs. Moore.

stipulated price, and to pay the residue in money on a pre-scribed credit.

About the 14th of the same month the appellant left home for Memphis without any previous notice to the appellee of such intended absence or of the duration of it. And this circumstance seeming to excite some apprehension that the contract would not be satisfactorily fulfilled, the appellee forthwith proceeded to search the records for authentic evidence of its derivation from its alleged various sources. But, after a laborious exploration, unfacilitated by the appellant, no perfect title was found, and apparent liens encumbered the title, such as it may have been.

Shortly before the close of the year the appellant returned, and, on the 30th of December, 1864, tendered to the appellee a deed purporting to convey the legal title to the land as containing 130 acres. The boundaries described in the deed contain rather more than 130 acres; but that conveyance being rejected by the appellee, this suit was thereupon brought to enforce the acceptance of it.

These boundaries include four several tracts. The documentary evidence of title (as exhibited to each of which) was completed during the progress of this suit, and, though judicially insufficient on its recorded face, is yet reasonably assured by uninterrupted claim of occupancy, of most of the 130 acres, for more than 50 years.

The appellant derived his claim to another portion, of about 50 acres, from a sale under execution against its owner, Morris, at a price not equal to one third of its value, as to which both Morris and himself seemed to contemplate a redemption on equitable terms without regard to time; and, consequently, without a conveyance to the appellant of the legal title to any portion of the land thus sold. They, some time after the statutory right of redemption had been lost by time, made a conventional fence on the Millville road, passing nearly midway through the 50 acres, and Morris ever afterwards retained and cultivated the portion of about 27 acres on the east of that line, and the appellant has claimed and occupied only the portion of about 23 acres on the west side

of it. But, during the pendency of this suit, the appellant procured from Morris a conveyance of the legal title to the entire 50 acres.

When the appellant tendered the deed he neither exhibited any document of title to the land embraced by it, nor made any explanation of the condition of his title; and the appel- lee insists that, at the date of the contract, the appellant had no available claim to the 27 acres then occupied and claimed by Morris, and denies that the contract included any land east of the Millville road, or that he (appellee) should be required to take inferior land not embraced in his contract. His answer resisted a specific execution on that ground, and various other grounds, none of which latter, except one here- inafter to be noticed, are deemed worthy of grave considera- tion.

The circuit court dismissed the appellant's petition; and, after careful consideration and some perplexity, we do not feel authorized to pronounce that judgment erroneous. The following are the principal reasons for this conclusion:

1. The sudden and inconvenient absence of the appellant at the critical time for transition of the parties and the con- summation of the contract was apparently unexpected, and, until explained, rather ominous of either his unwillingness or inability to fulfill it punctually and assuredly. And this preg- nant disappointment, combined with the abortive result of the appellee's intermediate search for title, and the appellant's failure to exhibit any evidence of title, or explain why he did not, authorized the non-acceptance and repudiation by the appellee, especially as he had good reason to apprehend that there was no documentary or other satisfactory title, and the parties were then apparently in *statu quo*.

2. Although the pleadings and other evidence authorize some doubt whether the Millville fence was represented by the appellant, and understood by the appellee, as the eastern boundary of the land intended by the contract, yet the fact that the appellant is not shown to have had any available, or even actual, claim east of that line, and the fact that he had never occupied the land east of it, but that it had been occu-

pied and cultivated annually by the appellee ostensibly as his own, without intermission or question, negative any interpretation of the contract which will make it embrace that fraction by the only identifying terms—the appellant's "farm *on which he now resides.*" But this deduction, whether strong or weak, is almost conclusively fortified by the positive evidence of appellee's unimpeached son, who states a conversation the day after the date of the contract, in which the appellant defined the land sold so as to exclude all the land east of the fence on the Millville road; and by the additional fact, also, that, while the 27 acres occupied by Morris were covered with growing wheat, the appellant, during the negotiation, said that *he had sown no wheat on his land that year*.

The only judicial conclusion is, that the appellee did not intend to buy, or understand that he was buying, any of that fraction of 27 acres.

This conclusion is neither defeated nor much weakened by the fact that the exclusion of that fraction leaves only about 105 acres in a tract sold as containing 130 acres; for a glance of the eye from the salient point of comprehensive observation, without any instrumental aid for true measurement, might easily, on such an undulating surface, have inclined the appellee to accredit the assured quantity of 130 acres.

Under all the circumstances it is quite probable that, either for himself or Morris, appellant intended, if he could procure Morris' consent and deed, to include the fraction of 27 acres in his conveyance to the appellee, so as to give him the stipulated quantity of 130 acres; and that he did say that his own certain and undisputed claim was bounded east by the Millville fence. And if this be true, in describing the land as the memorial of the contract did, the appellant may have acted in perfect good faith, and thought that the appellee would prefer the tract of 130 to that of 105 acres.

But however this may be, we cannot conscientiously compel the appellee to either pay for land he did not buy, or to accept a conveyance of 105 acres when he bought 130 acres.

3. Fences represented as boundaries are on the lands of other persons, and probably owned by them, and would have

to be removed at the appellee's expense and to his essential loss; and this is a material consideration.

4. The parties now apparently stand more nearly in *statu quo* than they would probably be placed by specific enforcement of the contract, according to any proper construction of it. And the record allows no apprehension that the dismission of the appellant's petition will subject him to any appreciable damage or material loss or unreasonable disappointment, which his own prudence might not have avoided.

Wherefore, the judgment is affirmed.